**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

LONNIE W. SMITH JR.,
by and through his guardian
Wanda Smith,

                Plaintiff,

v.                                    CIVIL ACTION NO. 3:23-0746

WEST VIRGINIA DEPARTMENT OF
CORRECTIONS AND REHABILITATION,
WILLIAM K. "BILLY" MARSHALL III,
individually & in his official capacity as the
Commissioner of the West Virginia Department
of Corrections and Rehabilitation,
CARL W. ALDRIDGE,
individually & in his official capacity as an
employee of the West Virginia Department
of Corrections and Rehabilitation, and
JOHN/JANE DOE CORRECTIONAL OFFICERS,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending is Defendant West Virginia Department of Corrections and Rehabilitation (WVDOCR), Defendant William K. "Billy" Marshall III, and Defendant Carl W. Aldridge's Motion to Dismiss Plaintiff's First Amended Complaint. ECF No. 15.[1] For the reasons stated herein, the Motion is **GRANTED in part** and **DENIED in part.**

---

[1] In making its decision, the Court considered the following documents: Plaintiff's First Am. Complaint, ECF No. 14; Defendant West Virginia Department of Corrections and Rehabilitation, Defendant William K. "Billy" Marshall III, and Defendant Carl W. Aldridge's Memorandum in Support of Motion to Dismiss Plaintiff's First Amended Complaint ("Defs.' Mem."), ECF No. 16; Plaintiffs' Response in Opposition to Defendant West Virginia Department of Corrections and Rehabilitation, Defendant William K. "Billy" Marshall, and Defendant Carl W. Aldridge's Motion

## I.    Background

Plaintiff alleges the following facts. Plaintiff Lonnie W. Smith was incarcerated at Western Regional Jail in Barboursville, West Virginia on October 16, 2021, when the jail informed emergency medical services that he was "found lying unresponsive on the floor of his single person cell with blood running out of [his] nose." First Am. Compl. ¶¶ 1, 5 (alteration in original).

Plaintiff "suffered a large left cerebral convexity subdural hematoma with close to 2 cm of midline shift and entrapment of the right lateral ventricle." *Id.* at ¶ 1. Plaintiff also sustained "multiple areas of brain contusion throughout the surface of the left hemisphere of his cortical brain and C5-C6 ligamentous injury." *Id.*

As a result of his injuries, Plaintiff underwent an "emergency decompressive craniectomy." *Id.* at ¶ 2. Plaintiff remained comatose for several weeks after his surgery, and on February 2, 2022, his mother, Wanda Smith, was appointed as his guardian. *Id.* at ¶¶ 6–7. Despite medical treatment, Plaintiff's injuries are permanent "and include both physical and cognitive impairments, as well as disfigurement." *Id.* at ¶ 3.

Plaintiff submits that his injuries "are consistent with acts of violence, not falling from a prison bed[,] as was reported to his treating physicians." *Id.* at ¶ 35.

Plaintiff's First Amended Complaint contains the following causes of action: (I) violations of 42 U.S.C. § 1983; (II) negligence; (III) infliction of emotional distress.

---

to Dismiss Plaintiffs' First Amended Complaint ("Pl.'s Resp."), ECF No. 17; and Defendant West Virginia Department of Corrections and Rehabilitation, Defendant William K. "Billy" Marshall III, and Defendant Carl W. Aldridge's Reply to Plaintiff's Response in Opposition to Defendants' Motion to Dismiss Plaintiff's First Amended Complaint ("Defs.' Reply"), ECF No. 18.

## II. Legal Standard

Pursuant to *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), courts must look for "plausibility" in the complaint. This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Id*. at 555 (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id*. (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotation marks and citations omitted).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail. In *Iqbal*, the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 556 U.S. at 678 (internal quotation marks and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id*. at 679.

## III. Analysis

In the Motion to Dismiss, Defendants make the following claims: Plaintiff's claim are barred by the statute of limitations; Defendants WVDOCR, Marshall, and Aldridge are entitled to Eleventh Amendment Immunity; Defendants WVDOCR, Marshall, and Aldridge are not "persons" under § 1983; Defendants Aldridge and Marshall did not act in their individual

capacities; Defendants are entitled to qualified immunity; and Plaintiff's intentional infliction of emotional distress claim made mere conclusory statements insufficient to withstand dismissal.

The Court takes each claim in turn.

### A.  Statute of Limitations.

Defendants argue that Plaintiff's First Amended Complaint must be dismissed because it is time-barred. Importantly, the Court notes "a court may grant a 12(b)(6) motion on statute of limitations grounds only 'if the time bar is apparent on the face of the complaint.'" *Semenova v. Md. Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017) (quoting *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005)).

The relevant statute of limitations for Plaintiff's claims is two years. *See* W. Va. Code § 55-2-12(b) (providing two-year limitation period for personal injury claims); *Owens v. Balt. City State's Attys. Office*, 767 F.3d 379, 388 (4th Cir. 2014) (holding that the statute of limitations for § 1983 claims is borrowed from the state's personal-injury cause of action).

For Plaintiff's § 1983 claims, the time of accrual is a matter of federal common law. *Wallace v. Keto*, 549 U.S. 384, 388 (2007). Under federal common law "it is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action against a defendant— that is, when the plaintiff knows or has reason to know of his injury." *Owens v. Balt. City State's Attys. Office*, 767 F.3d 379, 389 (4th Cir. 2014).

Yet because Congress did not establish a body of tolling rules for § 1983 claims, the Court looks to the analogous tolling rules of the state. *See Kato*, 549 U.S. at 394 ("We have generally referred to state law for tolling rules, just as we have for the length of statutes of limitations.").

Here, the Court finds that there are two considerations that prevent the Court from finding Plaintiff's claim is untimely on its face.

*First*, West Virginia recognizes the "discovery rule," which tolls the statute of limitations "until a claimant knows or by reasonable diligence should know of his claim." *Gaither v. City Hospital, Inc.*, 487 S.E.2d 901, 906 (W. Va. 1997). Here, Plaintiff's Complaint alleges that he was comatose for weeks because of his injuries and that a guardian was appointed in February 2022. Accordingly, it is not apparent when Plaintiff knew or should have known of his injuries.

*Second*, West Virginia also recognizes that a statute of limitations can be tolled when a plaintiff is "insane." When assessing whether a plaintiff is "insane" for the purposes of § 55-2-15, the Court is directed to consider the definition of "mental illness" in West Virginia Code § 27-1-2. "Mental illness" is defined by West Virginia law as "a manifestation in a person of significantly impaired capacity to maintain acceptable levels of functioning in the areas of intellect, emotion and physical well-being." W. Va. Code § 27-1-2.

The Court rejects Defendants' suggestion that Plaintiff must have pled he was "deemed 'insane' by a Court of competent jurisdiction from the time period of October 16, 2021, until his mother was appointed guardian," Defs.' Reply at 14, as West Virginia law states no such requirement.

At bottom, Plaintiff claims (1) that his injury caused him to remain in a coma for several weeks, (2) that his mother was appointed as his guardian due to his injuries, and (3) that his injuries caused "cognitive impairments." First Am. Compl. ¶¶ 3, 6–7. Such allegations are certainly enough to raise a question as to whether he has a "significantly impaired capacity to maintain acceptable levels of functioning in the areas of intellect, emotion and physical well-being." W. Va. Code § 27-1-2.

In sum, Plaintiff's claims are not facially barred by the statute of limitations, and Defendants' motion to dismiss on this basis is **DENIED.**

## B.  Eleventh Amendment Immunity

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "This immunity extends as well to state agencies and other government entities properly characterized as 'arm[s] of the State.'" *Gray v. Law*, 51 F.3d 426, 430 (4th Cir. 1995) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)). WVDOCR is such an arm of the State. W.Va. Code § 25–1–1 et seq. Accordingly, Plaintiff's claims against WVDOCR are barred by the Eleventh Amendment and must be dismissed.

Additionally, a defendant who is employed by an arm of the state and is sued in his official capacity "is also immune from suit in federal court under the Eleventh Amendment." *Edwards v. West Virginia*, No. 2:00-cv-0775, 2002 WL 34364404, at *5 (S.D.W. Va. Mar. 29, 2002). Defendants Marshall and Aldridge are employed by an arm of the state and are therefore immune from suit in federal court in their official capacities. Therefore, Plaintiff's claims against Marshall and Aldridge in their official capacities must be dismissed.[2]

Plaintiff's claims against Defendants WVDOCR, Marshall, and Aldridge in their official capacities are barred by the Eleventh Amendment, and Defendants' motion to dismiss on this basis is **GRANTED**.

## C.  "Persons" Under 42 U.S.C. § 1983

The United States Supreme Court has made clear that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, in addition to being immune from suit under § 1983, WVDOCR,

---

[2] As noted in *infra*, Plaintiff's § 1983 claims against Defendants Marshall and Aldridge in their *individual capacities* are not barred by the Eleventh Amendment.

as an arm of the state, is not a "person" under 42 U.S.C. § 1983.[3] The same is true for Marshall

and Aldridge acting in their official capacities.

## D.  Individual Capacity

Suits against an officer in their individual capacities "seek to impose individual liability

upon a government officer for actions taken under color of state law." *Hafer v. Melo,* 502 U.S. 21,

31 (1991). Therefore, to establish individual liability in a § 1983 suit, a plaintiff must demonstrate

that "the official, acting under color of state law, caused the deprivation of a federal right." *Id.*

(citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

Defendants argue that since Plaintiff failed to articulate facts that Marshall and Aldridge

acted in their individual capacities, the claims against them must be dropped. However, Defendants

misunderstand individual capacity suits.

As the Supreme Court noted in *Hafer*, official capacity and individual capacity suits are

"best understood as [references] to the capacity in which the state officer is sued, not the capacity

in which the officer inflicts the alleged injury." *Id.* at 26; *see also Workman v. Mingo Cnty. Sch.,*

667 F. Supp. 2d 679, 688 (S.D.W. Va. 2009). Plaintiff need only sue Defendants in their individual

capacity, he need not allege that Defendants acted in their individual capacity. Therefore,

Defendants' motion to dismiss on this basis is **DENIED**.

## E.  Qualified Immunity

Defendants claim that Plaintiff's First Amended Complaint fails to state a claim because

Defendants are protected by qualified immunity. Below, the Court considers whether qualified

immunity applies to each of the federal and state claims presented by Plaintiff.

1.  Federal Claims

---

[3] Plaintiff has not stated a *Monell* claim against WVDOCR.

Plaintiff's § 1983 claims fit within three categories: (1) that John/Jane Doe Correctional Officers violently abused Plaintiff or allowed others to do so; (2) that WRJ was understaffed and/or overcrowded; (3) that official customs or policies violated Plaintiff's rights.

### i.    *Violence Against Plaintiff*

In his complaint, Plaintiff details his injuries. First Am. Compl. ¶¶ 1, 5. He further alleges that his "injuries are consistent with acts of violence, not falling from a prison bed . . . ." *Id.* at ¶ 35. Plaintiff had a single person cell. *Id.* at ¶ 5. The implication of this allegation is that either the John/Jane Doe Correctional Officers tasked with monitoring the jail violently harmed Plaintiff or allowed people incarcerated at the jail to do so. If this claim is true, which the Court assumes at this stage, then John/Jane Doe Correctional Officers "violate[d Plaintiff's] clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 230 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Therefore, qualified immunity does not apply to the John/Jane Doe Correctional Officers in this claim. Defendants' motion to dismiss on this basis is **DENIED**, and Plaintiff may proceed with this portion of his claim.

### ii.    *Understaffing and Overcrowding the Western Regional Jail*

Plaintiff also claims that the "WRJ, through the actions of Defendants WVDOCR, Marshall, and Aldridge, lacked adequate staffing . . . to protect Mr. Smith from personal injury." First Am. Compl. ¶ 39. Plaintiff continues, arguing that because of these same Defendants' actions, "there were not enough correctional officers . . . to hear and respond to Mr. Smith's medical emergency." *Id.* at ¶ 40. Plaintiff reprises the understaffing argument and adds an overcrowding argument later in the claim. *Id.* at ¶ 44, 47–48.

Plaintiff provides no factual allegations to substantiate that WRJ was understaffed or overcrowded. Instead, Plaintiff seems to rely on the logic that had WRJ been properly staffed, Plaintiff would not have been harmed. This Court has rejected similar roundabout logic in a slightly different but relevant context that included two of the same Defendants here. Further, the one factual allegation Plaintiff provides related to overcrowding—that he had a cell to himself— undermines the overcrowding argument.

In *Jeffers v. Albright*, this Court found "that Plaintiff's claim is little more than a bare allegation that he would not have been injured if Defendants WVDCR and Aldridge would have performed their jobs properly" and that "Plaintiff must make more than a 'skeletal' allegation to overcome immunity." No. CV 3:22-0268, 2023 WL 2266140, at *6 (S.D.W. Va. Feb. 28, 2023). Though *Jeffers* dealt specifically with immunity in negligent hiring, training, retention, and supervision claims, the logic appropriately extends to the instant case, where Plaintiff makes claims in the same conclusory fashion. Therefore, Defendants' motion to dismiss on this basis is **GRANTED**.

### iii.    Official Policies or Customs

Plaintiff also alleges that "WVDOCR, through the John/Jane Doe Correctional Officers, Superintendent Aldridge, and Commissioner Marshall, deprived Plaintiff of his Fourteenth Amendment rights by and through its official policies or customs, *inter alia*, WRJ policies and procedures, and the National Commission on Correctional Healthcare's Jail and Prison Standards." First Am. Compl. ¶ 43. However, Plaintiff provides no explanation as to what these policies are or how these policies harmed Plaintiff. Plaintiff seems to be applying the same logic as used in the previous section. Therefore, for the same reasons, this Court holds Defendant's motion to dismiss on this basis is **GRANTED**.

2.  State Law Claims

Plaintiff also makes state law tort claims that call Defendants' qualified immunity into question. Plaintiff argues two distinct negligence claims and an intentional infliction of emotional distress claim. In his Response, Plaintiff narrows the negligence claim against Defendants WVDOCR, Aldridge, and Marshall to one of vicarious liability. *Pl.'s Resp.*, at 6–7. Since the Response leaves unclear whether Plaintiff wishes to preserve his mere negligence claim against John/Jane Doe Correctional Officers, the Court addresses the mere negligence claim as well.

       i.     *Mere Negligence*

A claim for negligence is a question of state tort law. *See Wheeling Park Comm'n v. Dattoli*, 787 S.E.2d 546, 551 (W. Va. 2016). Accordingly, West Virginia's qualified immunity standards govern the Court's analysis with respect to Plaintiff's negligence claim. *Bosley v. Lemmon*, 656 F. Supp. 2d 582, 590 (S.D.W. Va. Aug. 31, 2009). Of course, these state standards broadly mirror their federal counterparts. *Kowalski v. Berkeley Cnty. Pub. Schs.*, No. 3:07-CV-147, 2009 WL 10675108, at *19 (N.D.W. Va. Dec. 22, 2009). Under West Virginia law, "[a] public executive official who is acting within the scope of his authority . . . is entitled to qualified immunity from personal liability for official acts if the involved conduct did not violate clearly established laws of which a reasonable official would have known." *W. Va. Reg'l Jail and Corr. Facility Auth. v. A.B.*, Syl. Pt. 5, 766 S.E.2d 751, 755 (W. Va. 2014) (quoting *State v. Chase Secs., Inc.*, Syl, 424 S.E.2d 591 (W. Va. 1992)).

This Court has dealt with mere negligence claims against correctional officers before. *Lavender v. W. Virginia Reg'l Jail & Corr. Facility Auth.*, No. CIV. A. 3:06-1032, 2008 WL 313957 (S.D.W. Va. Feb. 4, 2008). In *Lavender*, the plaintiff alleged the correctional officers "negligently and recklessly breached their duties to protect . . . [the plaintiff's] health and welfare"

and that the correctional officers' "'negligent, careless, and reckless manner' [caused the plaintiff] to suffer 'emotional and physical distress, humiliation, mental anguish, and embarrassment.'" *Id.* at *2. The allegations are comparable to the instant case where Plaintiff alleges Defendants "breached their duties of care to Plaintiff by failing to protect Mr. Smith from injury . . . [and] from violence[.]" First Am. Compl. ¶¶ 57–58.

In *Lavender*, this Court applied *Clark v. Dunn*, 465 S.E.2d 374 (W.Va. 1995). *Id.* at *7–9. *Clark* granted a conservation officer employed by the West Virginia Department of Natural Resources qualified immunity in a mere negligence claim. *Clark*, Syl. Pt. 6. *Clark* stands for the more general proposition that:

> In the absence of an insurance contract waiving the defense, the doctrine of qualified or official immunity bars a claim of mere negligence against a State agency not within the purview of the West Virginia Governmental Tort Claims and Insurance Reform Act, W.Va.Code § 29–12A–1, et seq., and against an officer of that department acting within the scope of his or her employment, with respect to the discretionary judgments, decisions, and actions of the officer.

*Id.* This Court has held *Clark* applies to correctional officers in mere negligence claims in the past and does so again in the instant case. Therefore, Defendants' motion to dismiss on this basis is **GRANTED**.

    ii.    *Vicarious Liability*

Plaintiff claims Defendants WVDOCR, Aldridge, and Marshall are vicariously liable for John/Jane Doe Correctional Officers' actions. *Pl.'s Resp.* at 6–7. Defendant takes issue with whether this claim was properly raised in the initial complaint. *Defs.' Reply* at 8–9. Whether

Plaintiff adequately raised the *respondeat superior* argument in his First Amended Complaint is irrelevant, as the outcome is the same regardless.

In *W. Virginia Reg'l Jail & Corr. Facility Auth. v. A.B.*, the Supreme Court of Appeals of West Virginia (SCAWV) instructed how to determine how qualified immunity applies to *respondeat superior*. 234 W. Va. 492, 766 S.E.2d 751 (2014). The SCAWV held that the first step to determining whether immunity exists is to "first identify the nature of the governmental acts or omissions which give rise to the suit . . . constitute legislative, judicial, executive or administrative policy-making acts or otherwise involve discretionary governmental functions." *Id.* Syl. Pt. 10. If the acts or omissions fall into the former category, absolute immunity exists. *Id.* However, if the acts or omissions are discretionary, then the "reviewing court must further determine whether the plaintiff has demonstrated that such acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive." *Id.* Syl. Pt. 11. Without such a showing, "the State and its officials or employees charged with such acts or omissions are immune from liability." *Id.* However, if such a showing is made, "the court must then determine whether such acts or omissions were within the scope of the public official or employee's duties, authority, and/or employment." *Id.* Syl. Pt. 12.

In *A.B.*, the SCAWV found that the acts and omissions of correctional officers are generally discretionary. *Id.* at 768. This Court finds the same in this case. The plaintiff in *A.B.* alleged a correctional officer raped her, which the SCAWV found to be a violation of clearly established law. *Id.* Plaintiff's claims are essentially that John/Jane Doe Correctional Officers violently abused him or allowed others to violently abuse him in his single occupant room. This Court finds such

actions to be a violation of clearly established law. Therefore, the remaining question is whether John/Jane Doe Correctional Officers were acting within the scope of their employment.

To answer this question, Plaintiff points the Court to *Holley v. W. Virginia Div. of Corr. & Rehab.* where the Court allowed a *respondeat superior* claim to survive. No. 2:23-CV-00652, 2024 WL 390085 (S.D.W. Va. Jan. 31, 2024). In *Holley*, the plaintiff, who was incarcerated at South Central Regional Jail (SCRJ), was in line to receive an inhaler. *Id.* at *1. The plaintiff informed a correctional officer that he was struggling to breathe and needed to move up in line. *Id.* After multiple complaints, the correctional officer took the plaintiff back to his cell, slapped him, and discovered "hooch." *Id.* After the plaintiff denied the hooch was his, the correctional officer asked the plaintiff, in front of other people the plaintiff was incarcerated with, whether the plaintiff was a "snitch" and yelled that the plaintiff was "ratting out" his cellmate. *Id.* The correctional officer then said, "they don't take too kindly to rats in here." *Id.* The plaintiff was brutally beaten by multiple people who were incarcerated with him and had to go to the hospital. *Id.* The *Holley* Court found that the question of *respondeat superior* survived the motion to dismiss stage because a question remained as to whether the correctional officer was acting within his scope of employment. *Id.* at *4.

The *Holley* facts, while heinous, present multiple opportunities for a jury to reasonably conclude the correctional officer in *Holley* was within his scope of employment. For example, a jury could interpret the correctional officer was attempting to maintain order in the jail by removing the plaintiff from the line. Additionally, a jury could find the correctional officer's questions and accusations towards the plaintiff were in pursuit of finding the source of the hooch with the goal of ridding the SCRJ of hooch. These possibilities do not present themselves in the present case.

Instead, this Court finds the facts of another case, *Jeffers v. Aldridge*, more analogous to the current case. No. CV 3:22-0268, 2023 WL 2266140 (S.D.W. Va. Feb. 28, 2023). In *Jeffers*, the plaintiff alleged that "he was handcuffed behind his back and that, without provocation, he was tripped and/or pushed face first onto the deck." *Id.* at *4. He further alleged he was "brutally beaten, kicked, and slammed face first on the deck several times by the correctional officers." *Id.* This Court found such conduct "does not fall within the scope of the correctional officers' employment." *Id.* This Court finds the same to be true in the instant case. Therefore, Defendants' motion to dismiss on this basis is **GRANTED**.

### iii.    Intentional Infliction of Emotional Distress (IIED)

West Virginia does not provide state officials qualified immunity for acts that are "fraudulent, malicious, or otherwise oppressive[.]" *A.B.*, Syl. Pt. 5, 766 S.E.2d at 755. Since an element of IIED claims requires the defendant's conduct to be so "atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency," qualified immunity does not prevent such claims. *Travis v. Alcon Labs, Inc.*, 504 S.E.2d 419, 425 (W. Va. 1998).

## F.  Sufficiency of IIED Claim

To sustain an IIED claim in West Virginia, a plaintiff must establish four elements:

(1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from its conduct; (3) the actions of the defendant caused the plaintiff to suffer emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Travis v. Alcon Labs, Inc.*, 504 S.E.2d 419, 425 (W. Va. 1998) (emphasis added). "[I]n evaluating a defendant's conduct in an intentional or reckless infliction of emotional distress claim, the role of the trial court is to first determine whether the defendant's conduct may reasonably be regarded

as so extreme and outrageous as to constitute the intentional or reckless infliction of emotional distress." *Id.* at 428.

To meet this burden, a plaintiff must allege conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and *utterly intolerable in a civilized community*." *Keyes v. Keyes*, 392 S.E.2d 693, 696 (W. Va. 1990) (emphasis in original). "A court's role is therefore to undertake a highly fact-specific inquiry into particular allegations made against particular defendants and determine whether a plaintiff has alleged conduct that may reasonably be regarded as meeting this high threshold." *Jeffers v. W. Va. Div. of Corrs. & Rehabilitation*, No. CV 3:19-0462, 2020 WL 521851, at *7 (S.D.W. Va. Jan. 31, 2020).

1.  IIED Claims Against Defendants WVDOCR, Aldridge, and Marshall

Plaintiff has not stated sufficient facts to proceed with IIED claims against Defendants WVDOCR, Aldridge, and Marshall. Plaintiff cites to how these Defendants failed to ensure proper facilities and take reasonable safety measures. First Am. Compl. ¶¶ 64–65. He maintains that "Defendants in failing to take reasonable measures to ensure the safety of Mr. Smith . . . did directly and proximately cause severe emotional distress to Plaintiff, and thereby constituted intentional infliction of emotional distress." *Id.* at ¶ 66.

Plaintiff asks the Court to interpret Defendants' actions of allowing WRJ to be overcrowded and understaffed without providing any factual allegations of the WRJ being overcrowded and understaffed. The only factual allegation that Plaintiff provides—that he had a cell to himself—cuts against the argument WRJ was overcrowded. Further, Plaintiff asks us to interpret the WRJ conditions as Defendants acting with "intent to inflict emotional distress, or act[] recklessly when it was certain or substantially certain emotional distress would result from [their]

conduct," as is required in an IIED claim. *Travis*, 504 S.E.2d at 425. Plaintiff provides no factual allegations from which the Court can imply such an intent. Therefore, Defendants' motion to dismiss on this basis is **GRANTED**.

### 2. IIED Claims Against John/Jane Doe Correctional Officers

Plaintiff has adequately pled IIED claims against John/Jane Doe Correctional Officers. Plaintiff alleges John/Jane Doe Correctional Officers violently abused him or allowed others to do so. Plaintiff asserts his physical and cognitive injuries are permanent and that the injuries caused disfigurement. First Am. Compl. ¶ 3. The Court finds the conduct plead by Plaintiff to be "atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency[.]" *Travis*, 504 S.E.2d at 425. Further, the Court finds that an intent to inflict emotional distress can reasonably be inferred. Finally, the Court also finds that the alleged actions of John/Jane Doe Correctional Officers could plausibly have caused Plaintiff emotional distress and that the emotional distress was "so severe that no reasonable person could be expected to endure it." *Id.* Therefore, Defendants' motion to dismiss on this basis is **DENIED**, and Plaintiff may proceed with this portion of his claim.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss all claims against Defendants WVDOCR, Aldridge, and Marshall. As described above, the Court **DENIES** the motion insofar as the Motion to Dismiss sought to dismiss the §1983 and IIED claims against John/Jane Doe Correctional Officers.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER:        October 22, 2024

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

-17-